*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1283**

State of Minnesota,
Respondent,

vs.

Bradley Dean Johnson,
Appellant.

**Filed July 18, 2016
Reversed and remanded
Stauber, Judge**

Anoka County District Court
File No. 02-CR-14-1596

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, MN 55303 (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from his convictions of fifth-degree possession of methamphetamine and storing methamphetamine in the presence of a child, appellant argues that his

convictions must be reversed because the district court committed reversible error by admitting unnoticed, irrelevant, and highly prejudicial *Spreigl* evidence in the form of his statements to police that he previously used methamphetamine. Because appellant's statements regarding his methamphetamine usage constitutes evidence of a *Spreigl* bad act, and the district court committed prejudicial error by admitting this evidence, we reverse and remand.

## FACTS

In March 2014, appellant Bradley Dean Johnson was charged with one count of fifth-degree possession of methamphetamine in violation of Minn. Stat. § 152.025, subd. 2(b)(1) (2012), and one count of storing methamphetamine in the presence of a child in violation of Minn. Stat. § 152.137, subd. 2(a)(4) (2012). Prior to trial, the district court granted appellant's motion in limine to preclude the state from (1) presenting any *Spreigl* evidence and (2) introducing any evidence referencing appellant's prior conviction of fifth-degree controlled-substance crime. The district court also asked the prosecutor if the state would be presenting the audio of an interview police conducted with appellant after his arrest. The prosecutor stated that he did not anticipate introducing the actual audio of appellant's statement, but would take testimony about the statement from the investigator.

At trial, the state presented evidence that in November 2012, law enforcement executed a search warrant at a residence in Coon Rapids. In a bedroom identified as being occupied by appellant, police discovered a glass bulb pipe on top of a television. The pipe contained a white residue that later tested positive for methamphetamine. Police also found a small torch and a red canister containing more than 0.4 grams of methamphetamine in a

"cupboard mounted on the closet wall in that [same] bedroom." And in a bedroom located adjacent to appellant's room in which a woman was living with her two children, police discovered a glass pipe and several plastic baggies containing a "white crystal substance."

During the examination of an investigating officer, the prosecutor inquired about his interview with appellant. The district court interrupted the examination and, outside the presence of the jury, expressed confusion about the prosecutor's apparent intention to introduce the recording given his pretrial representation that he did not intend to play the audio recording of appellant's interview with police. The prosecutor replied that he changed his mind and that he now wanted to introduce the audio of appellant's statement, which included the following exchange:

| POLICE: | How long have you used methamphetamine? |
| APPELLANT: | I used it a long time ago and then just recently off and on, not very much. |
| POLICE: | How frequently, how many days a week? |
| APPELLANT: | Not even—just recently like—(inaudible). |

Counsel for appellant responded by asking the court to rule on whether appellant's admission to previously using methamphetamine was past conduct covered by the court's pretrial ruling on *Spreigl* evidence, or "whether it is considered intrinsic" evidence. Counsel for appellant claimed that appellant's statement was not only irrelevant, but constituted *Spreigl* evidence that was deemed inadmissible by the district court's pretrial order precluding the introduction of *Spreigl* evidence.

The district court overruled appellant's objection, concluding that the statement was not *Spreigl* evidence and that the "entire statement is admissible in evidence . . . as any

3

statement of a party opponent would be under the rules of evidence." The recording of appellant's statement was then played to the jury. In the statement, appellant acknowledged staying in the room in which the methamphetamine residue and pipe were found. Although appellant denied that the canister containing methamphetamine and the pipe were his, he admitted that his fingerprints might be on them because he "moved" them.

The jury found appellant guilty of the charged offenses. The district court later sentenced appellant to concurrent stayed terms of 12 months and one day on the fifth-degree controlled-substance offense, and 13 months on the other offense. This appeal followed.

## DECISION

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).

Appellant argues that the district court erred by (1) concluding that his admission to previous and occasional recent methamphetamine usage did not constitute a *Spreigl* bad act and (2) allowing the state to introduce this unnoticed, irrelevant, and unfairly prejudicial *Spreigl* evidence. Appellant contends that because he was prejudiced by the erroneous introduction of the *Spreigl* evidence, he is entitled to a new trial.

## I.

As a general rule, evidence of past crimes or bad acts, known as *Spreigl* evidence, is not admissible to prove the character of a person or that the person acted in conformity

4

with that character in committing an offense.  Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965).  However, *Spreigl* evidence may be admitted for limited, specific purposes, to demonstrate factors such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Minn. R. Evid. 404(b).

The district court concluded that appellant's statement was not *Spreigl* evidence because the "use of drugs is not really misconduct."  The district court also concluded that the statement was admissible "as any statement of a party opponent would be under the rules of evidence."  We acknowledge that appellant's statement constitutes an exception to the hearsay rule and is admissible as a statement by a party opponent under rule 801(d)(2).  *See* Minn. R. Evid. 801(d)(2) (stating that a statement is not hearsay if the statement is offered against a party and is the party's own statement).  But non-hearsay evidence is still subject to other rules of evidence.  *See* Minn. R. Evid. 402 (providing that all relevant evidence is admissible except as otherwise provided); *see also* Minn. R. Evid. 403 (stating that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice").  Thus, although admissible under rule 801(d)(2), the statement may not be admissible if it constitutes a *Spreigl* bad act.

Appellant argues that the district court "clearly erred when it concluded that evidence of methamphetamine use is not evidence of a prior bad act" because it "is illegal to possess and sell methamphetamine" and, therefore, it "logically follows that using methamphetamine . . . is a bad act."  We agree.  A *Spreigl* act must be a "'bad' act."

5

*State v. McLeod*, 705 N.W.2d 776, 787-88 (Minn. 2005); *see also Ture v. State*, 681 N.W.2d 9, 16-17 (Minn. 2004) (holding that evidence that defendant collected information on women was not *Spreigl* evidence because there is nothing inherently wrong with collecting information on women). "But the prior bad act need not constitute a crime." *McLeod*, 705 NW.2d at 788.

Here, the alleged "bad act" is the use of controlled substances. Such an act is generally not considered acceptable by societal standards. And appellant's admission that he previously used methamphetamine implies that he previously possessed the substance, which not only is a crime, but is the underlying offense in this case. *See* Minn. Stat. § 152.025, subd. 2(b)(1). Moreover, despite the state's claim to the contrary, appellant's statement was clearly admitted to prove that appellant acted in conformity with that bad act in committing the charged offense. Therefore, we conclude that appellant's statement regarding his previous and occasional methamphetamine usage constitutes a *Spreigl* bad act.

## II.

Because we conclude that appellant's statement is a *Spreigl* bad act, we must next determine whether the district court abused its discretion by admitting the evidence. *See State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006) (stating that the admission of *Spreigl* evidence is reviewed for an abuse of discretion). Before a district court may admit *Spreigl* evidence, five elements must be met:

> (1) the state must give notice of its intent to admit the evidence;
> (2) the state must clearly indicate what the evidence will be
> offered to prove; (3) there must be clear and convincing

6

> evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Id.* at 685-86.

Appellant argues that the first element is not satisfied because the state failed to give notice of its intent to admit the evidence. We agree. The Minnesota Rules of Criminal Procedure provide that "[t]he prosecutor *must* notify the defendant or defense counsel in writing of any crime, wrong, or act that may be offered at trial under Minn. R. Evid. 404(b)." Minn. R. Crim. P. 7.02, subd. 1 (emphasis added). "[T]he purpose of the notice requirement is to prevent a defendant from being taken by surprise by the introduction of evidence of collateral bad acts." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). To warrant reversal, the untimely notice must also be prejudicial. *See State v. Woodard*, 256 N.W.2d 478, 479 (Minn. 1977) (concluding that, although the *Spreigl* notice was late, the "defendant does not appear to have been prejudiced by the tardiness" because "[f]ormal notice was given 3 days before the trial began and defendant has not shown that he did not have adequate time to prepare to meet the evidence").

Here, the state did not provide appellant with formal notice that it would seek to admit any *Spreigl* evidence. This failure to provide notice is contrary to the rules of criminal procedure, which states that such notice "must" be provided if known at the time. *See* Minn. R. Crim. P. 7.02, subd. 1; *see also* Minn. Stat. § 645.44, subd. 15a (2014) (stating that "'must' is mandatory"). The record reflects that appellant's statement was known to the prosecutor prior to trial. In fact, the prosecutor was specifically asked

about the audio of appellant's statement to police, and the prosecutor informed the district court that he did not anticipate introducing the audio of the statement. And, the district court granted appellant's motion in limine which precluded the state from presenting any *Spreigl* evidence. At trial, however, the prosecutor changed his mind about playing the audio and, without notice to appellant, or even the district court, sought to introduce the audio. The prosecutor's actions were blatant, and lacked good reason for failing to provide appellant with notice. With no notice of the state's intent to play the audio of appellant's statement, along with an order prohibiting the admission of any *Spreigl* evidence, appellant had no reason to prepare for the admission of the *Spreigl* bad act at issue here. Thus, the lack of notice by the state was prejudicial.

Appellant also contends that his statement is more prejudicial than probative. Again, we agree. "*Spreigl* evidence must not be more prejudicial than probative." *State v. Wright*, 719 N.W.2d 910, 917 (Minn. 2006). In determining whether the evidence's probative value outweighs its prejudicial impact, this court balances the relevance of the evidence and "the [s]tate's need to strengthen weak or inadequate proof" against the risk that the evidence will be used as propensity evidence. *State v. Fardan*, 773 N.W.2d 303, 319 (Minn. 2009). "Prior bad act evidence can be unfairly prejudicial if it is used by the jury for an improper purpose, such as proof of a defendant's propensity to commit the charged offense." *State v. Scruggs*, 822 N.W.2d 631, 644 (Minn. 2012).

In his statement, appellant admitted using methamphetamine "a long time ago and then just recently off and on, not very much." There is no question that this statement is prejudicial; it portrays appellant as a former drug user who recently relapsed into using

8

methamphetamine again. And because appellant is charged with fifth-degree possession of methamphetamine, the statement is particularly prejudicial due to the likelihood of the jury using it for the improper purpose of proof of appellant's propensity to commit the charged offense. Although the state claims that the evidence is probative because it demonstrates appellant's familiarity with methamphetamine, we cannot conclude that its probative value outweighs the highly prejudicial nature of the statement. Therefore, because the state failed to provide proper notice of its intent to admit the *Spreigl* bad act, and the prejudicial nature of the evidence outweighs its probative value, we conclude that the district court abused its discretion by admitting appellant's statement regarding his methamphetamine usage.[1]

### III.

Finally, appellant argues that he is entitled to a new trial because there is a reasonable likelihood that the district court's error in admitting the *Spreigl* bad act substantially influenced the verdict. *See State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015). In determining whether the evidence significantly affected the verdict, the reviewing court considers the manner in which the evidence was presented, whether the

---

[1] We note that appellant's statement is inadmissible under rule 404(b) because its potential for unfair prejudice outweighs its probative value, which is a higher threshold for admissibility than rule 403. *Compare* Minn. R. Evid. 404(b) (providing that prior-bad-act evidence is admissible only if "the probative value of the evidence is not outweighed by its potential for unfair prejudice") *with* Minn. R. Evid. 403 (providing that relevant evidence "may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice" (emphasis added)). But even under the lower threshold for admissibility under rule 403, appellant's statement regarding his methamphetamine usage would be inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice.

district court gave a cautionary instruction, whether the state referenced the evidence in closing arguments, the strength of the state's other evidence, and any evidence appellant may have produced in defense. *State v. Bolte*, 530 N.W.2d 191, 198-99 (Minn. 1995).

Here, appellant was charged with constructively possessing methamphetamine after police discovered more than 0.4 grams of the controlled substance in the room where he was staying. But the record reflects that drug paraphernalia was found throughout the house, and appellant denied that the methamphetamine was his. Moreover, no cautionary instruction was provided by the district court, and the prosecutor referenced appellant's statement during closing arguments. The consideration of these factors, along with the prejudicial nature of appellant's statement leads, us to the conclusion that the error affected appellant's substantial rights because there is a reasonable likelihood that the error had a significant effect on the verdict. Accordingly, we reverse and remand for proceedings not inconsistent with this opinion.

**Reversed and remanded.**